IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAD RICH, KEVIN MURPHY, GREYE BROOKS, and ERIC ATWOOD, *on behalf of themselves and all others similarly situated*, | CIVIL DIVISION Case No.<br><br>2:22-cv-1455 |
| Plaintiffs, | |
| v. | |
| DON'S APPLIANCES, LTD, | |
| Defendant. | |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

A. **_Preliminary Statement_**

1. This action is brought to recover unpaid overtime compensation owed to the plaintiffs, on their own behalf and on behalf of all those similarly situated, pursuant to Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.* (the "PMWA"). For at least two years prior to filing this complaint, the defendant habitually deducted thirty minutes of compensable pay from each shift worked regardless of whether the plaintiffs and other similarly situated employees actually received an uninterrupted thirty-minute meal break, resulting in unpaid wages and unpaid overtime compensation in violation of the FLSA and PMWA.

B. **_Jurisdiction and Venue_**

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) and 28 U.S.C. § 1367 (supplemental jurisdiction over state claims).

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to this claim occurred in this district and because the defendant has facilities and does business in this district.

C. **_The parties_**

4. The plaintiff Brad Rich is an adult individual who resides in Hancock County, West Virginia.

5. The plaintiff Kevin Murphy is an adult individual who resides in Washington County, Pennsylvania.

6. The plaintiff Greye Brooks is an adult individual who resides in Allegheny County, Pennsylvania.

7. The plaintiff Eric Atwood is an adult individual who resides in Allegheny County, Pennsylvania.

8. The defendant Don's Appliances, LTD is an entity headquartered in Pittsburgh, Pennsylvania. The defendant sells, installs and services home appliances, including refrigerators, dish washers, washers, and dryers.

9. At all times relevant, the defendant conducted business in western Pennsylvania, including Allegheny County.

10. At all times relevant, the defendant was an employer within the meaning of 29 U.S.C. § 203(d) and 43 P.S. § 333.103(g).

11. At all times relevant, the defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

12. At all times relevant, the defendant was an enterprise engaged in commerce and/or had employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce within the meaning of 29 U.S.C. § 203(s)(1).

13. The plaintiffs' consents are attached as Exhibits "A" through "D". Written consents to join this action as to the First Cause of Action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

D. **_Collective Action Allegations_**

14. The plaintiffs bring the First Cause of Action pursuant to 29 U.S.C. § 216(b), on their own behalf and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by the defendant's unlawful conduct.

15. The class which the plaintiffs seek to represent and for whom the plaintiffs seek the right to send opt-in notices for purposes of the FLSA collective action (the "FLSA Collective Action"), and of which the plaintiffs are members is defined as follows: all Delivery and Installation Technicians employed within the three years preceding the filing of this action whose pay was subject to an automatic thirty-minute meal period deduction even when they performed compensable work during the unpaid "meal break" (the "Collective Members" or the "FLSA Collective").

16. Although the plaintiffs and the Collective Members may have had slightly different job duties and/or worked in different locations, this action may be properly maintained as a collective action because, throughout the relevant period:

> (a) the plaintiffs and the Collective Members were governed by, and subjected to, the same work policies and practices and were deprived of wages owed for unpaid meal breaks;
>
> (b) the plaintiffs and the Collective Members had the same employer;

3

(c) the defendant controlled all aspects of the work performed by the plaintiffs and the Collective Members, assigned their job titles, descriptions and responsibilities, assigned and supervised their training;

(d) the defendant maintained common scheduling systems, policies and practices with respect to the plaintiffs and the Collective Members;

(e) the defendant maintained common payroll systems, policies and practices with respect to the plaintiffs and the Collective members; and

(f) the defendant's labor relations and human resources systems were centrally-organized and controlled, and shared a common management team that controlled the policies and practices at issue in this case.

17. The plaintiffs are unable to state at this time the exact number of people that are encompassed by the FLSA Collective Action, but upon information and belief, it consists of more than 30 persons.

18. This action is maintainable as an opt-in collective action pursuant to 29 U.S.C § 216(b) as to claims for unpaid straight time and overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to the plaintiffs, numerous current and former employees are similarly situated with regard to their wages and claims for unpaid wages and damages. The plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

19. These similarly situated employees are known to the defendant, are readily identifiable through the defendant's personnel, scheduling, time and payroll records and from input received from the Collective Members as part of the notice and opt-in process. Given the composition and size of the FLSA Collective Action, its members can be informed of the pendency of this action directly via U.S. mail, email and/or other means and methods as determined by the court.

E.   **_Class Action Allegations_**

20.   The plaintiffs bring the Second Cause of Action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on their own behalf and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by the defendant's unlawful conduct.

21.   The class which the plaintiffs seek to represent and of which the plaintiffs are members, is composed of and defined as follows:  all Delivery and Installation Technicians employed within the three years preceding the filing of this action whose pay was subject to an automatic thirty-minute meal period deduction even when they performed compensable work during the unpaid "meal break" (the "Pennsylvania Class").

22.   The persons in the Pennsylvania Class identified above are so numerous that joinder of all members is impracticable. Although the plaintiffs do not know the precise number of such persons, the facts on which the calculation of that number can be based are presently within the sole control of the defendant.

23.   Upon information and belief, the size of the Pennsylvania Class is at least 30 workers.

24.   The defendant acted or refused to act on grounds generally applicable to the Pennsylvania Class, thereby making appropriate final relief with respect to the Pennsylvania Class as a whole.

25.   The Second Cause of Action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Pennsylvania Class that predominate over any questions solely affecting individual members of the Pennsylvania Class, including but not limited to:

(a) whether the defendants failed to keep true and accurate time records for all hours worked by the plaintiffs and the Pennsylvania Class;

(b) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

(c) whether the defendant failed and/or refused to pay the plaintiffs and the Pennsylvania Class overtime pay for hours worked in excess of 40 hours per workweek within the meaning of the PMWA;

(d) the nature and extent of Pennsylvania Class-wide injury and the appropriate measure of damages for the Pennsylvania Class;

(e) whether the defendant has a policy of requiring, suffering or permitting former and current Delivery and Installation Technicians to perform work during unpaid meal breaks the for the defendant's benefit, but did not properly compensate them for this work; and

(f) whether the defendant's policy of requiring, suffering or permitting former and current Delivery and Installation Technicians to perform work during unpaid meal breaks for the defendant's benefit was done willfully or with reckless disregard of the relevant statutes.

26. The claims of the plaintiffs are typical of the claims of the Pennsylvania Class they seek to represent. The plaintiffs and the Pennsylvania Class Members work or have worked for the defendant and have been subjected to its policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week. The defendant acted and refused to act on grounds generally applicable to the Pennsylvania Class, thereby making declaratory relief with respect to the Pennsylvania Class appropriate.

27. The plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Class. The plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Pennsylvania Class to represent its interests fairly and adequately. The plaintiffs recognize that, as class representatives, they must represent and consider the interests of the Pennsylvania Class just as they would represent and consider their own interests. The plaintiffs understand that in decisions regarding the conduct of the litigation and its possible

settlement, they must not favor their own interests over those of the Pennsylvania Class. The plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Pennsylvania Class. The plaintiffs understand that, in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing him with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

28. The plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

29. A class action is superior to other available methods for the fair and efficient adjudication of this litigation; particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Pennsylvania Class have been damaged and are entitled to recovery as a result of the defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Pennsylvania Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about the defendant's practices.

F.  **_Factual Allegations_**

30. The defendant operates approximately ten retail and/or warehouse locations in western Pennsylvania and employs Delivery and Installation Technicians to deliver and install appliances purchased by its customers.

31. Brad Rich was employed by the defendant from approximately August 2019 through October 4, 2022. He was employed as a Delivery and Installation Technician.

32. Kevin Murphy was hired in June 2016 and is currently employed by the defendant. He is employed as a Delivery and Installation Technician.

33. Greye Brooks was employed by the defendant from approximately January 2018 through September 30, 2022. He was employed as a Delivery and Installation Technician.

34. Eric Atwood was employed by the defendant from approximately July 2019 through August 1, 2021. He was employed as a Delivery and Installation Technician.

35. The plaintiffs' job duties included: reviewing their assigned route for the day; loading the appliances; getting parts and tools necessary for the installations; communicating with customers on their route throughout the day regarding delivery issues; making deliveries to the customers; staging and connecting the appliances; and making sure that the installed appliances are working properly before moving on to the next scheduled stop.

36. Typically, the plaintiffs and other similarly situated employees were teamed in pairs, one of them driving the vehicle and the other riding as a passenger.

37. The plaintiffs and other similarly situated employees were non-exempt employees under the FLSA.

38. The plaintiffs and other similarly situated employees were paid an hourly wage.

39. The plaintiffs and other similarly situated employees reported each day to the warehouse and clocked in, commencing their workday. At the end of their day, after all customer deliveries were made, the plaintiffs returned to the warehouse and clocked out after completing any remaining work tasks.

40. Significantly, the computerized time system utilized by the defendant required the employee to be physically located at the warehouse to punch in and out; in other words, the plaintiffs and other similarly situated employees were not able to punch in or out while they were on the road or at a customer's location.

41. The daily schedule for the plaintiffs and other similarly situated employees was provided to them and detailed the order of customer stops to be made and the time window for each stop. The schedules did not account for, build in or make room for lunch breaks.

42. The plaintiffs and other similarly situated employees were required to take a thirty-minute unpaid meal break at some point during the day but were also required to make sure that all deliveries on their route were completed by the end of the day.

43. The computerized time system utilized by the defendant automatically "punched out" the plaintiffs and other similarly situated employees exactly four hours after the initial punch in for a period of thirty minutes without regard to whether they actually took his or her meal break at that time. As stated above, the plaintiffs and other similarly situated employees were not able to manage their time punches unless they were physically present at the warehouse. When that automatic punch out was "clocked", the plaintiffs and other similarly situated employees were typically either enroute to a customer's location or in the customer's home working.

44. As a result of the way the defendant scheduled the daily routes for the plaintiffs and other similarly situated employees, it was usually impossible to take a thirty-minute meal break at the time of the automatic punch out and, further, it was impractical to stop for an uninterrupted thirty-minute period during the day to take a meal break. As a result, the plaintiffs

and other similarly situated employees either did not take a meal break at all or just took a couple of minutes to hurriedly eat before resuming work.

45. The defendant illegally shifted the burden of "finding" thirty uninterrupted minutes to take an unpaid meal break on the plaintiffs and other similarly situated employees and they were subject to discipline, including warnings and counseling if they requested compensation for working through the unpaid meal break. The defendant's management told the plaintiffs and other similarly situated employees that it was their own fault if they worked through their meal break.

46. When the automatic deduction of time for meal breaks was first implemented, the defendant nominally had a policy whereby the plaintiffs and other similarly situated employees could report missed meal breaks and have the time worked added back for purposes of their payroll. However, the defendant soon discontinued this policy and/or made it difficult to report missed meal breaks. Further, the defendant routinely ignored the plaintiffs and other similarly situated employees when they reported missed meal breaks and made threats against them if they persisted in seeking compensation for that time.

47. The plaintiffs and other similarly situated employees were actively dissuaded and prohibited from requesting reimbursement if they worked through the day without a meal break. The only exception was if the plaintiffs and other similarly situated employees worked on a Saturday, depending on the hours worked.

48. For example, Tim Walton, Installation Manager, sent a text to Brad Rich on November 9, 2020, detailing the defendant's policy regarding meal breaks: *Just a reminder.* ***We are no longer pulling lunches from time cards****. All lunches must be taken. Saturday's* [sic] *I will make exception* [sic] *depending on the hours worked.* (emphasis supplied).

49. The defendant knew or should have known that plaintiffs and other similarly situated employees were regularly working through their unpaid meal breaks but refused to pay them for that work. Further, despite the defendant's admonition that *"all lunches must be taken,"* the defendant suffered and/or permitted the plaintiffs and other similarly situated employees to work through meal breaks without compensation.

50. The defendant failed to ensure that "unauthorized" work was not being performed during meal breaks.

51. The defendant failed and refused to count work performed by the plaintiffs and other similarly situated employees during unpaid meal breaks as "hours worked."

52. The plaintiffs, and, upon information and belief, all other similarly situated employees, typically worked through lunch and were not able to take an unpaid meal as often as four days out of any week and were not paid for that thirty minutes of work on each of those days. In other words, the plaintiffs and all other similarly situated employees were required to work eight-and-a-half hours to earn wages for an eight-hour shift.

53. The unpaid work performed by the plaintiffs and other similarly situated employees was readily ascertainable by the defendant.

54. Further, there was no practical administrative difficulty of recording this unpaid work of the plaintiffs and other similarly situated employees. It could have been precisely recorded for payroll purposes by allowing them to punch in or out for a meal break during the day without regard to their physical location or by allowing them to report whether they took a thirty minute meal break when they returned to the warehouse on each work day.

55. Further, the defendants could have provided a set time for meal breaks in the daily schedules of the plaintiffs and other similarly situated employees. The practice of listing

customer stops "back to back" during the day, with no time allotted for a meal break, assured that the plaintiffs and other similarly situated employees would not be able to take an uninterrupted thirty minute meal break.

56. This unpaid work performed by the plaintiffs and other similarly situated employees constituted a part of their principal activities, was required by the defendant and was performed for the defendant's benefit.

57. Moreover, this unpaid work was an integral and indispensable part of other principal activities performed by the plaintiffs and other similarly situated employees.

58. As a result of the plaintiffs and other similarly situated employees not being paid for all hours worked, they were not paid the full value of overtime compensation for all the hours they worked over 40 each workweek.

59. The plaintiffs and other similarly situated employees typically worked at least 40 hours each workweek.

60. For at least the past two years, the defendant has been aware of the requirements of the FLSA and the PMWA and their corresponding regulations necessary to provide employees performing non-exempt work with overtime compensation. Despite this knowledge, the defendant has failed to pay the plaintiffs and other similarly situated employees the mandatory lawful overtime compensation or to conform the duties of these employees to the requirements of the FLSA and PMWA.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.**
**On behalf of the plaintiff and the FLSA Collective**

61. The plaintiffs incorporate by reference all allegations in all preceding paragraphs.

62. The defendant engaged in a widespread pattern, policy, and practice of violating

the FLSA, as detailed in this complaint.

63. The defendant's practice and policy of not paying the plaintiffs and other similarly situated employees for work performed during "mandatory" unpaid meal breaks violated the FLSA, 29 U.S.C. § 207, 29 C.F.R. § 785.24.

64. The defendant's practice and policy of not paying the plaintiffs and other similarly situated employees for all work performed each day violated the FLSA, 29 U.S.C. § 207, 29 C.F.R. § 785.24.

65. The defendant's practice and policy of not paying the plaintiffs and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 in a workweek violates the FLSA, 29 U.S.C. § 207.

66. The defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by the plaintiffs and other similarly situated employees violate the FLSA.  *See* 29 C.F.R. § 516(a)(7).

67. The defendant's violations of the FLSA, as described in this complaint, have been willful and intentional.

68. The defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of the plaintiffs and the members of the FLSA Collective.

69. Because the defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

70. As a result of the defendant's violations of the FLSA, the plaintiffs and the members of the FLSA Collective have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of

such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
**Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.*
On behalf of the plaintiff and the Pennsylvania Class Members**

71. The plaintiffs incorporate by reference all allegations in all preceding paragraphs.

72. The defendant has engaged in a widespread pattern, policy, and practice of violating the PMWA, as detailed in this complaint.

73. The defendant's practice and policy of not paying the plaintiff and other similarly situated employees for work performed during "mandatory" unpaid meal breaks violated the PMWA, 43 P.S. § 333.101 *et seq.*

74. The PMWA requires an employer, such as the defendant, to compensate all non-exempt employees for all hours worked. The plaintiff and the Pennsylvania Class Members are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

75. At all relevant times, the defendant had a policy and practice of failing and refusing to pay overtime pay and other wages to the plaintiffs and the Pennsylvania Class Members for their hours worked, including hours in excess of 40 hours per week.

76. As a result of the defendant's failure to record, report, credit, and furnish to the plaintiffs and the Pennsylvania Class Members their respective wage and hour records showing all wages earned and due for all work performed, the defendant has failed to make, keep, preserve, and furnish such records, in violation of 43 P.S. § 333.108.

77. The plaintiffs, on behalf of themselves and members of the Pennsylvania Class, seek recovery of attorneys' fees, costs, and expenses of this action to be paid by the defendant, as provided by 43 P.S. § 333.113.

78. As a result of the defendant's violations of the PMWA, the plaintiffs and the Pennsylvania Class Members have suffered damages by being denied overtime wages in accordance with the PMWA in amounts to be determined at trial, and are entitled to recovery of such amounts, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the PMWA, 43 P.S. § 260.1 *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs and all those similarly situated request that this court:

A. Issue an order permitting this litigation or proceed as a collective action as per the First Cause of Action and a class action as per the Second Cause of Action;

B. Issue an order designating Michael J. Bruzzese as counsel for the FLSA Collective and Pennsylvania Class;

C. Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all Collective Members that this litigation is pending and they have the right to opt-in to this litigation;

D. Award the plaintiffs and the members of the FLSA Collective and the Pennsylvania Class actual damages for unpaid wages, including overtime wages;

E. Award the plaintiffs and the members of the FLSA Collective statutory liquidated damages;

F. Award the plaintiffs and the members of the FLSA Collective and the Pennsylvania Class pre- and post-judgment interest at the statutory rate;

G. Award the plaintiffs and the members of the FLSA Collective and the Pennsylvania Class attorneys' fees, costs and disbursements;

H.  Award the plaintiffs and the members of the FLSA Collective and the Pennsylvania Class further and additional relief as this court deems just and proper.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306

220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiffs

Dated: October 14, 2022